## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| Daniel Bell, Jeremy Bright, Andrew Brown, Jared Brown, Jeff Burgess, Hank Crossman Jr., Nathan Dove, Ken Enlow, Jason Ewing, Justin Foringer, Scott Gales, Barry Gillum, Lamont Paulk, Joseph Richardson, Moussa Sayed, Chris Scott, Jason Siewert, William Wasdin, Cleatis Webb, and Jeffrey Whisner, individually and on behalf of others similarly situated | Case No. _____ <br><br> **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |
|                            Plaintiffs, <br><br> v. <br><br> CSX Transportation, Inc., <br><br>                            Defendant. | |

## INTRODUCTION

1.      Defendant CSX Transportation, Inc. ("CSX"), the third largest railroad in the United States, operates a 365-days-a-year business, meaning employees are needed for work on weekends and holidays. While CSX employees understand that working on weekends and holidays comes with the territory, they did not anticipate having to work through serious illnesses, miss their children's births, or choose between caring for their sick loved ones and losing their jobs.

2.      These activities, of course, make up the core substantive conduct protected by the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Yet CSX has engaged in a brazen pattern and practice of unlawfully discouraging FMLA leave and retaliating against workers who rely on the FMLA's protections.

3.      CSX has done so in three ways. *First*, CSX unlawfully inflates the amount of time employees are charged for FMLA leave. Department of Labor regulations require employers to

"account for [FMLA] leave using an increment no greater than the shortest period of time that the employer uses to account for use of other forms of leave provided that it is not greater than one hour[.]" 29 C.F.R. § 825.205(a). CSX, however, accounts for FMLA leave by the *day* instead of by the *hour*. In other words, if an employee takes FMLA leave for four hours, from 10 p.m. to 2 a.m., CSX unlawfully calculates the leave as two days instead of four hours. CSX's policy has the purpose and effect of unlawfully minimizing the amount of FMLA leave taken by its employees.

4.    *Second*, in 2015, the company implemented an attendance policy that explicitly punishes employees for taking lawful FMLA leave. The policy assigns negative points for absences but allows employees to remove points through subsequent uninterrupted attendance over a specified period of time. Employees who take FMLA leave during the remediation period, however, are deemed ineligible to reduce their points. As a consequence, employees who have taken FMLA leave are treated more unfavorably than those who did not. CSX's attendance policy effectively forces employees to choose between using their FMLA leave or returning to CSX's good graces—they cannot do both.

5.    *Third*, beginning in 2017 and continuing to the present, CSX has terminated or suspended over 100 employees on the allegation that these employees had fraudulently taken FMLA leave. CSX's large-scale purge of its workforce culminated immediately after the 2017 holiday season. One by one, employees learned that their holiday gift from CSX for the exercise of federally-protected FMLA rights was a suspension or pink slip. CSX's allegations of fraud were not only false but baseless. CSX punished these employees without any evidence of fraud. On the contrary, these workers *substantiated* their entitlement to FMLA leave. But CSX terminated or suspended them anyways.

6.      CSX's genuine motivations were crystal clear. Though its actions, CSX sought to chill the lawful use of FMLA leave and punish workers who took FMLA leave. Honoring the FMLA requires businesses to bear the costs of retaining a greater number of employees to cover all shifts. These costs can be especially acute for businesses like CSX who operate seven days a week, 365 days a year, including on weekends and holidays. By disregarding the FMLA's clear mandate, CSX saved significant sums of money by reducing its total workforce, limiting its employees' lawful use of FMLA leave, and sending a clear message to the remaining employees: take FMLA leave at you own peril.

7.      CSX, through its conduct, has violated the FMLA's anti-retaliation and anti-interference provisions as well as the anti-discrimination provision of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*[1]

8.      Plaintiffs bring this class action to restrain and enjoin CSX from engaging in a pattern and practice of punishing employees for taking FMLA leave and to recover damages caused by CSX's unlawful retaliatory conduct.

## PARTIES

9.      Plaintiff Daniel Bell, who worked for CSX for over twelve years, resides in Bedford, Indiana.

10.     Plaintiff Jeremy Bright, who worked for CSX for almost six years, resides in West Point, Georgia.

11.     Plaintiff Andrew Brown, who worked for CSX for more than eleven years, resides in Auburndale, Florida.

---

[1] Plaintiffs, as representatives of the putative classes defined below, intend to amend the complaint to include their ADA claims after they exhaust their administrative remedies.

12.     Plaintiff Jared Brown, who worked for CSX from 2001 to the incident at issue in this case, resides in Zionsville, Indiana.

13.     Plaintiff Jeff Burgess, who worked for CSX from May of 2007 to the incident at issue in this case, resides in Cumberland, Maryland.

14.     Plaintiff Hank Crossman Jr., who worked for CSX from 2011 to the incident at issue in this case, resides in Liverpool, New York.

15.     Plaintiff Nathan Dove, who worked for CSX for more than eight years, resides in Trussville, Alabama.

16.     Plaintiff Ken Enlow, who has worked for CSX for more than fourteen years, resides in Avon, Indiana.

17.     Plaintiff Jason Ewing, who worked for CSX for nearly six years, resides in Cresaptown, Maryland.

18.     Plaintiff Justin Foringer, who worked for CSX for over thirteen years, resides in Cazenovia, New York.

19.     Plaintiff Scott Gales, who worked for CSX for over thirteen years, resides in Hamburgh, Kentucky.

20.     Plaintiff Barry Gillum, who has worked for CSX for over seventeen years, resides in Cumberland, Maryland.

21.     Plaintiff Lamont Paulk, who has worked for CSX for over eleven years, resides in Fort Wayne, Indiana.

22.     Plaintiff Joseph Richardson, who has worked for CSX from November of 2000 to the incident at issue in this case, resides in Springville, Alabama.

23.     Plaintiff Moussa Sayed, who has worked for CSX for nearly five years, resides in Oregon, Ohio.

24.     Plaintiff Chris Scott, who has worked for CSX for nearly sixteen years, resides in Lumberton, North Carolina.

25.     Plaintiff Jason Siewert, who has worked for CSX for over four years, resides in Henderson, Kentucky.

26.     Plaintiff William Wasdin, who worked for CSX for nearly thirteen years, resides in Waycross, Georgia.

27.     Plaintiff Cleatis Webb, who has worked for CSX for over fourteen years, resides in Amelia, Ohio.

28.     Plaintiff Jeffrey Whisner, who worked for CSX for over seven years, resides in Rawlings, Maryland.

29.     CSX is headquartered in Jacksonville, Florida and provides freight rail transportation services in several states, including Maryland.

## JURISDICTION AND VENUE

30.     This Court has original jurisdiction over Plaintiffs' FMLA claims under 28 U.S.C. § 1331.

31.     Venue is proper under 28 U.S.C. § 1391 because Plaintiffs Jeff Burgess, Jason Ewing, Barry Gillum, and Jeffrey Whisner reside in Maryland; CSX operates in Maryland; and some of the illegal conduct occurred in Maryland.

## FACTUAL ALLEGATIONS

## CSX'S COMPANYWIDE PRACTICES

32.     CSX operates a 365-day-a-year business, meaning employees are needed on

weekends and holidays.

33.    While employees know that employment with CSX means having to work on weekends and holidays, they did not anticipate having to work through illnesses, miss their children's births, or being forced to choose between working and caring for their sick loved ones.

34.    Many employees have relied on FMLA leave.

35.    Employees' lawful use of FMLA has prevented CSX from reducing its workforce in the way it would like.

36.    CSX has therefore sought to curb its employees lawful us of FMLA in three ways.

37.    First, CSX has sought to limit the amount of FMLA its employees may take by miscounting the amount of leave they take.

38.    The FMLA entitles employees to take up to twelve weeks of leave a year.

39.    When employees apply for FMLA leave, their doctors approve them for a certain amount of time over a given period.

40.    The FMLA requires employers to allow employees to use FMLA leave in the smallest increment of time the employer allows for other forms of leave, as long as that increment is no more than one hour.

41.    CSX counts FMLA usage by the day, *e.g.*, if an employee uses FMLA leave for one standard overnight shift, CSX counts it as the employee taking two days instead of eight hours of FMLA leave.

42.    CSX's counting method illegally reduces the amount of FMLA leave its employees may take.

43.    Second, CSX has sought to deter its employees from using FMLA by, in 2015, implementing an attendance policy, called the "Crew Attendance Point System," or "CAPS," that

penalizes employees for taking FMLA leave.

44.     Under the CAPS policy, CSX assigns points to employees who miss work. When employees accrue a certain number of points, they are terminated. CSX erases points from the employees' records when the employees go a certain period of time without missing a day of work.

45.     However, under the terms of the policy, employees who take FMLA leave during that same remediation time period are not eligible to have points erased from their record. Under CSX's attendance policy, in other words, an employee who does not miss work for the period specified in the CAPS policy will have points removed from his record. A second employee, who takes a single day off work to attend the birth of his child but is otherwise identically situated to the first employee, *retains* his points and remains on probation—and at a heightened risk of termination.

46.     CSX's purpose in enacting the CAPS policy was to discourage the lawful use of FMLA leave and punish employees who took FMLA leave.

47.     Third, beginning in 2017, CSX has engaged in a concerted campaign to purge itself of a significant portion of its employees who rely on FMLA leave and scare the remainder of its workforce from taking such leave by disciplining and terminating employees who use FMLA leave on weekends and holidays.

48.     CSX's campaign culminated in January of 2018, when CSX charged over 140 of the over 800 employees who took FMLA leave on Christmas Eve, Christmas Day, New Year's Eve, or New Year's Day with a workplace rule violation—dishonesty—and removed them from service without pay for supposedly using their FMLA leave solely to avoid working on a holiday.

49.     CSX charged these employees with a workplace rule violation without having any reason to believe any of them had abused their FMLA leave.

50.     Under CSX's collective bargaining agreements with its employees' unions, the charged employees had a right to an internal hearing before they could be disciplined. The hearings, however, are not a neutral forum where an employee's responsibility for a supposed rule violation is fairly and independently determined. Instead, such hearings operate as a perfunctory means to assign blame to employees regardless of their actual responsibility for workplace rule violations. Hearing officers, who act as both prosecutor and judge, are members of management who are appointed by the company. Hearing officers have no legal training; charged employees do not have legal counsel present; the rules of evidence do not apply; and employees are frequently found responsible based entirely on hearsay. The company can compel witnesses to appear but employees cannot. The company may conduct an investigation prior to the hearing but does not provide any discovery—not to mention exculpatory evidence—to the charged employee. And the hearings typically take less than one day. It is well known that these hearings almost always are decided in favor of the railroad.

51.     For many of the charged employees, CSX leveraged the kangaroo-court nature of its discipline process by telling the employees that it would terminate them if they insisted on their right to a hearing. CSX then offered the employees a waiver, pursuant to which they could admit guilt, forgo the hearing, and receive a suspension without pay in lieu of termination.

52.     For the employees who refused to admit to something they had not done and the employees to whom it did not offer a waiver, CSX held pro forma hearings on the spurious charges.

53.     At the hearings, CSX unlawfully placed the burden on the employees to reveal more information about their and their loved ones' medical conditions than the FMLA requires.

54.     The hearings nevertheless completely refuted CSX's allegation of widespread FMLA fraud. On the contrary, employees pleaded with CSX to consider evidence that they

properly exercised their right to FMLA leave on account of their pre-existing—and well known—serious health conditions (or those of their family members). CSX did not listen.

55.     After the hearings, CSX either suspended or terminated the overwhelming majority of the charged employees.

56.     CSX's remaining employees who need FMLA leave are now terrified to exercise their rights under the FMLA. Having received CSX's message loud and clear, CSX's employees now go to all possible lengths to avoid taking FMLA leave.

## PLAINTIFF DANIEL BELL

57.     Plaintiff Daniel Bell suffers from a serious health condition within the FMLA's meaning.

58.     Plaintiff Daniel Bell had requested intermittent FMLA leave for his serious health condition.

59.     CSX approved Plaintiff Daniel Bell's request for intermittent FMLA leave.

60.     Since then, Plaintiff Daniel Bell has submitted the paperwork necessary to maintain his intermittent FMLA leave.

61.     CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Daniel Bell to be charged with using more FMLA leave than he had, in fact, taken.

62.     Plaintiff Daniel Bell's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

63.     From December 24, 2017 at 12:43 a.m. to December 24, 2017 at 5:20 p.m., Plaintiff Daniel Bell's serious health condition caused him to be unable to work.

64.     Plaintiff Daniel Bell therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been

approved.

65.    Thereafter, CSX accused Plaintiff Daniel Bell of abusing his intermittent FMLA leave and terminated him.

66.    CSX had no reason to believe Plaintiff Daniel Bell was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF JEREMY BRIGHT

67.    Plaintiff Jeremy Bright suffers from a serious health condition within the FMLA's meaning.

68.    Plaintiff Jeremy Bright had requested intermittent FMLA leave for his serious health condition.

69.    CSX approved Plaintiff Jeremy Bright's request for intermittent FMLA leave.

70.    Since then, Plaintiff Jeremy Bright has submitted the paperwork necessary to maintain his intermittent FMLA leave.

71.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Jeremy Bright to be charged with using more FMLA leave than he had, in fact, taken.

72.    Plaintiff Jeremy Bright's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

73.    From December 24, 2017 at 9:55 p.m. to December 26, 2017 at 11:48 a.m., Plaintiff Jeremy Bright's serious health condition caused him to be unable to work.

74.     Plaintiff Jeremy Bright therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

75.    Thereafter, CSX accused Plaintiff Jeremy Bright of abusing his intermittent FMLA

leave and terminated him.

76.     CSX had no reason to believe Plaintiff Jeremy Bright was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF ANDREW BROWN

77.     Plaintiff Andrew Brown suffers from a serious health condition within the FMLA's meaning.

78.     Plaintiff Andrew Brown had requested intermittent FMLA leave for his serious health condition.

79.     CSX approved Plaintiff Andrew Brown's request for intermittent FMLA leave.

80.     Since then, Plaintiff Andrew Brown has submitted the paperwork necessary to maintain his intermittent FMLA leave.

81.     CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Andrew Brown to be charged with using more FMLA leave than he had, in fact, taken.

82.     Plaintiff Andrew Brown's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

83.     From December 24, 2017 at 3:00 p.m. to December 26, 2017 at 12:03 a.m. and December 31, 2017 at 8:08 a.m. to January 1, 2018 at 12:01 a.m., Plaintiff Andrew Brown's serious health condition caused him to be unable to work.

84.     Plaintiff Andrew Brown therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

85.     Thereafter, CSX accused Plaintiff Andrew Brown of abusing his intermittent FMLA leave and terminated him.

86.     CSX had no reason to believe Plaintiff Andrew Brown was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF JARED BROWN

87.     Plaintiff Jared Brown suffers from a serious health condition within the FMLA's meaning.

88.     Plaintiff Jared Brown had requested intermittent FMLA leave for his serious health condition.

89.     CSX approved Plaintiff Jared Brown's request for intermittent FMLA leave.

90.     Since then, Plaintiff Jared Brown has submitted the paperwork necessary to maintain his intermittent FMLA leave.

91.     CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Jared Brown to be charged with using more FMLA leave than he had, in fact, taken.

92.     Plaintiff Jared Brown's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

93.     From December 23, 2017 at 11:38 p.m. to December 26, 2017 at 7:58 a.m., Plaintiff Jared Brown's serious health condition caused him to be unable to work.

94.     Plaintiff Jared Brown therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

95.     Thereafter, CSX accused Plaintiff Jared Brown of abusing his intermittent FMLA leave and terminated him.

96.     CSX had no reason to believe Plaintiff Jared Brown was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JEFF BURGESS**

97.     Plaintiff Jeff Burgess suffers from a serious health condition within the FMLA's meaning.

98.     Plaintiff Jeff Burgess had requested intermittent FMLA leave for his serious health condition.

99.     CSX approved Plaintiff Jeff Burgess's request for intermittent FMLA leave.

100.    Since then, Plaintiff Jeff Burgess has submitted the paperwork necessary to maintain his intermittent FMLA leave.

101.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Jeff Burgess to be charged with using more FMLA leave than he had, in fact, taken.

102.    Plaintiff Jeff Burgess's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

103.    From December 23, 2017 at 6:16 a.m. to December 25, 2017 at 11:11 p.m., Plaintiff Jeff Burgess's serious health condition caused him to be unable to work.

104.    Plaintiff Jeff Burgess therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

105.    Thereafter, CSX accused Plaintiff Jeff Burgess of abusing his intermittent FMLA leave and terminated him.

106.    CSX had no reason to believe Plaintiff Jeff Burgess was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF HANK CROSSMAN JR.**

107.    Plaintiff Hank Crossman Jr. suffers from a serious health condition within the

FMLA's meaning.

108.    Plaintiff Hank Crossman Jr. had requested intermittent FMLA leave for his serious health condition.

109.    CSX approved Plaintiff Hank Crossman Jr.'s request for intermittent FMLA leave.

110.    Since then, Plaintiff Hank Crossman Jr. has submitted the paperwork necessary to maintain his intermittent FMLA leave.

111.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Hank Crossman Jr. to be charged with using more FMLA leave than he had, in fact, taken.

112.    Plaintiff Hank Crossman Jr.'s use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

113.    From December 24, 2017 at 3:00 p.m. to December 26, 2017 at 8:06 a.m., Plaintiff Hank Crossman Jr.'s serious health condition caused him to be unable to work.

114.    Plaintiff Hank Crossman Jr. therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

115.    Thereafter, CSX accused Plaintiff Hank Crossman Jr. of abusing his intermittent FMLA leave and terminated him.

116.    CSX had no reason to believe Plaintiff Hank Crossman Jr. was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF NATHAN DOVE**

117.    Plaintiff Nathan Dove's father suffers from a serious health condition within the FMLA's meaning.

118.    Plaintiff Nathan Dove had requested intermittent FMLA leave so that he could care

for his father when his father's serious health condition so necessitated.

119.    CSX approved Plaintiff Nathan Dove's request for intermittent FMLA leave.

120.    Since then, Plaintiff Nathan Dove has submitted the paperwork necessary to maintain his intermittent FMLA leave.

121.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Nathan Dove to be charged with using more FMLA leave than he had, in fact, taken.

122.    Plaintiff Nathan Dove's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

123.    From December 24, 2017 at 1:37 p.m. to December 25, 2017 at 4:52 p.m., the serious health of Plaintiff Nathan Dove's father necessitated Plaintiff Nathan Dove taking time off work.

124.    Plaintiff Nathan Dove therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

125.    Thereafter, CSX accused Plaintiff Nathan Dove of abusing his intermittent FMLA leave and terminated him.

126.    CSX had no reason to believe Plaintiff Nathan Dove was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF KEN ENLOW**

127.    Plaintiff Ken Enlow suffers from a serious health condition within the FMLA's meaning.

128.    Plaintiff Ken Enlow had requested intermittent FMLA leave for his serious health condition.

129.    CSX approved Plaintiff Ken Enlow's request for intermittent FMLA leave.

130.    Since then, Plaintiff Ken Enlow has submitted the paperwork necessary to maintain his intermittent FMLA leave.

131.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Ken Enlow to be charged with using more FMLA leave than he had, in fact, taken.

132.    Plaintiff Ken Enlow's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

133.    From December 24, 2017 at 11:00 a.m. to December 26, 2017 at 9:14 a.m., Plaintiff Ken Enlow's serious health condition caused him to be unable to work.

134.    Plaintiff Ken Enlow therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

135.    Thereafter, CSX accused Plaintiff Ken Enlow of abusing his intermittent FMLA leave and suspended him for thirty days without pay.

136.    CSX had no reason to believe Plaintiff Ken Enlow was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JASON EWING**

137.    Plaintiff Jason Ewing suffers from a serious health condition within the FMLA's meaning.

138.    Plaintiff Jason Ewing had requested intermittent FMLA leave for his serious health condition.

139.    CSX approved Plaintiff Jason Ewing's request for intermittent FMLA leave.

140.    Since then, Plaintiff Jason Ewing has submitted the paperwork necessary to

maintain his intermittent FMLA leave.

141.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Jason Ewing to be charged with using more FMLA leave than he had, in fact, taken.

142.    Plaintiff Jason Ewing's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

143.    From December 24, 2017 at 10:01 a.m. to December 25, 2017 at 11:28 a.m., Plaintiff Jason Ewing's serious health condition caused him to be unable to work.

144.    Plaintiff Jason Ewing therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

145.    Thereafter, CSX accused Plaintiff Jason Ewing of abusing his intermittent FMLA leave and terminated him.

146.    CSX had no reason to believe Plaintiff Jason Ewing was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JUSTIN FORINGER**

147.    Plaintiff Justin Foringer suffers from a serious health condition within the FMLA's meaning.

148.    Plaintiff Justin Foringer had requested intermittent FMLA leave for his serious health condition.

149.    CSX approved Plaintiff Justin Foringer's request for intermittent FMLA leave.

150.    Since then, Plaintiff Justin Foringer has submitted the paperwork necessary to maintain his intermittent FMLA leave.

151.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused

Plaintiff Justin Foringer to be charged with using more FMLA leave than he had, in fact, taken.

152.    Plaintiff Justin Foringer's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

153.    From December 24, 2017 at 4:02 a.m. to December 26, 2017 at 10:13 a.m., Plaintiff Justin Foringer's serious health condition caused him to be unable to work.

154.    Plaintiff Justin Foringer therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

155.    Thereafter, CSX accused Plaintiff Justin Foringer of abusing his intermittent FMLA leave and terminated him.

156.    CSX had no reason to believe Plaintiff Justin Foringer was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF SCOTT GALES

157.    Plaintiff Scott Gales suffers from a serious health condition within the FMLA's meaning.

158.    Plaintiff Scott Gales had requested intermittent FMLA leave for his serious health condition.

159.    CSX approved Plaintiff Scott Gales's request for intermittent FMLA leave.

160.    Since then, Plaintiff Scott Gales has submitted the paperwork necessary to maintain his intermittent FMLA leave.

161.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Scott Gales to be charged with using more FMLA leave than he had, in fact, taken.

162.    Plaintiff Scott Gales's use of FMLA leave caused negative points under CSX's

CAPS system to remain on his record.

163.    From December 23, 2017 at 7:38 p.m. to December 25, 2017 at 1:50 a.m., Plaintiff Scott Gales's serious health condition caused him to be unable to work.

164.    Plaintiff Scott Gales therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

165.    Thereafter, CSX accused Plaintiff Scott Gales of abusing his intermittent FMLA leave and terminated him.

166.    CSX had no reason to believe Plaintiff Scott Gales was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF BARRY GILLUM

167.    Plaintiff Barry Gillum suffers from a serious health condition within the FMLA's meaning.

168.    Plaintiff Barry Gillum had requested intermittent FMLA leave for his serious health condition.

169.    CSX approved Plaintiff Barry Gillum's request for intermittent FMLA leave.

170.    Since then, Plaintiff Barry Gillum has submitted the paperwork necessary to maintain his intermittent FMLA leave.

171.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Barry Gillum to be charged with using more FMLA leave than he had, in fact, taken.

172.    Plaintiff Barry Gillum's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

173.    On Christmas Eve and Christmas Day, Plaintiff Barry Gillum's serious health

condition caused him to be unable to work.

174.    Plaintiff Barry Gillum therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

175.    Thereafter, CSX accused Plaintiff Barry Gillum of abusing his intermittent FMLA leave and suspended him for forty-five days.

176.    CSX had no reason to believe Plaintiff Barry Gillum was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF LAMONT PAULK**

177.    Plaintiff Lamont Paulk suffers from a serious health condition within the FMLA's meaning.

178.    Plaintiff Lamont Paulk had requested intermittent FMLA leave for his serious health condition.

179.    CSX approved Plaintiff Lamont Paulk's request for intermittent FMLA leave.

180.    Since then, Plaintiff Lamont Paulk has submitted the paperwork necessary to maintain his intermittent FMLA leave.

181.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Lamont Paulk to be charged with using more FMLA leave than he had, in fact, taken.

182.    Plaintiff Lamont Paulk's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

183.    From December 23, 2017 at 10:54 a.m. to December 25, 2017 at 11:05 p.m., Plaintiff Lamont Paulk's serious health condition caused him to be unable to work.

184.    Plaintiff Lamont Paulk therefore notified CSX via one of the means specified in

its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

185.    Thereafter, CSX accused Plaintiff Lamont Paulk of abusing his intermittent FMLA leave and suspended him for thirty days without pay.

186.    CSX had no reason to believe Plaintiff Lamont Paulk was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF JOSEPH RICHARDSON

187.    Plaintiff Joseph Richardson suffers from a serious health condition within the FMLA's meaning.

188.    Plaintiff Joseph Richardson had requested intermittent FMLA leave for his serious health condition.

189.    CSX approved Plaintiff Joseph Richardson's request for intermittent FMLA leave.

190.    Since then, Plaintiff Joseph Richardson has submitted the paperwork necessary to maintain his intermittent FMLA leave.

191.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Joseph Richardson to be charged with using more FMLA leave than he had, in fact, taken.

192.    Plaintiff Joseph Richardson's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

193.    During Christmas and New Year's in 2017, Plaintiff Joseph Richardson's serious health condition caused him to be unable to work.

194.    Plaintiff Joseph Richardson therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

195.    Thereafter, CSX accused Plaintiff Joseph Richardson of abusing his intermittent FMLA leave, suspended him for thirty days without for the FMLA leave he took during Christmas, and is in the process of terminating him for the FMLA leave he took during New Year's.

196.    CSX had no reason to believe Plaintiff Joseph Richardson was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF MOUSSA SAYED

197.    Plaintiff Moussa Sayed suffers from a serious health condition within the FMLA's meaning.

198.    Plaintiff Moussa Sayed had requested intermittent FMLA leave for his serious health condition.

199.    CSX approved Plaintiff Moussa Sayed's request for intermittent FMLA leave.

200.    Since then, Plaintiff Moussa Sayed has submitted the paperwork necessary to maintain his intermittent FMLA leave.

201.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Moussa Sayed to be charged with using more FMLA leave than he had, in fact, taken.

202.    Plaintiff Moussa Sayed's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

203.    From December 24, 2017 at 1:02 p.m. to December 26, 2017 at 8:27 a.m., Plaintiff Moussa Sayed's serious health condition caused him to be unable to work.

204.    Plaintiff Moussa Sayed therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

205.    Thereafter, CSX accused Plaintiff Moussa Sayed of abusing his intermittent FMLA

leave and suspended him for thirty days without pay.

206.    CSX had no reason to believe Plaintiff Moussa Sayed was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF CHRIS SCOTT

207.    Plaintiff Chris Scott suffers from a serious health condition within the FMLA's meaning.

208.    Plaintiff Chris Scott had requested intermittent FMLA leave for his serious health condition.

209.    CSX approved Plaintiff Chris Scott's request for intermittent FMLA leave.

210.    Since then, Plaintiff Chris Scott has submitted the paperwork necessary to maintain his intermittent FMLA leave.

211.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Chris Scott to be charged with using more FMLA leave than he had, in fact, taken.

212.    Plaintiff Chris Scott's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

213.    From December 25, 2017 at 12:03 a.m. to December 25, 2017 at 1:34 p.m., Plaintiff Chris Scott's serious health condition caused him to be unable to work.

214.    Plaintiff Chris Scott therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

215.    Thereafter, CSX accused Plaintiff Chris Scott of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was January 8 to February 14, 2018.

216.    CSX had no reason to believe Plaintiff Chris Scott was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF JASON SIEWERT

217.    Plaintiff Jason Siewert suffers from a serious health condition within the FMLA's meaning.

218.    Plaintiff Jason Siewert had requested intermittent FMLA leave for his serious health condition.

219.    CSX approved Plaintiff Jason Siewert's request for intermittent FMLA leave.

220.    Since then, Plaintiff Jason Siewert has submitted the paperwork necessary to maintain his intermittent FMLA leave.

221.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Jason Siewert to be charged with using more FMLA leave than he had, in fact, taken.

222.    Plaintiff Jason Siewert's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

223.    From December 23, 2017 at 11:44 a.m. to December 25, 2017 at 11:54 a.m., Plaintiff Jason Siewert's serious health condition caused him to be unable to work.

224.    Plaintiff Jason Siewert therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

225.    Thereafter, CSX accused Plaintiff Jason Siewert of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was January 3 to February 16, 2018.

226.    CSX had no reason to believe Plaintiff Jason Siewert was abusing his intermittent

FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF WILLIAM WASDIN

227.    Plaintiff William Wasdin suffers from a serious health condition within the FMLA's meaning.

228.    Plaintiff William Wasdin had requested intermittent FMLA leave for his serious health condition.

229.    CSX approved Plaintiff William Wasdin's request for intermittent FMLA leave.

230.    Since then, Plaintiff William Wasdin has submitted the paperwork necessary to maintain his intermittent FMLA leave.

231.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff William Wasdin to be charged with using more FMLA leave than he had, in fact, taken.

232.    Plaintiff William Wasdin's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

233.    From December 23, 2017 at 4:47 p.m. to December 26, 2017 at 6:17 a.m., Plaintiff William Wasdin's serious health condition caused him to be unable to work.

234.    Plaintiff William Wasdin therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

235.    Thereafter, CSX accused Plaintiff William Wasdin of abusing his intermittent FMLA leave and terminated him.

236.    CSX had no reason to believe Plaintiff William Wasdin was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF CLEATIS WEBB

237.    Plaintiff Cleatis Webb suffers from a serious health condition within the FMLA's meaning.

238.    Plaintiff Cleatis Webb had requested intermittent FMLA leave for his serious health condition.

239.    CSX approved Plaintiff Cleatis Webb's request for intermittent FMLA leave.

240.    Since then, Plaintiff Cleatis Webb has submitted the paperwork necessary to maintain his intermittent FMLA leave.

241.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Cleatis Webb to be charged with using more FMLA leave than he had, in fact, taken.

242.    Plaintiff Cleatis Webb's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

243.    From December 23, 2017 at 1:09 a.m. to December 25, 2017 at 9:53 a.m., Plaintiff Cleatis Webb's serious health condition caused him to be unable to work.

244.    Plaintiff Cleatis Webb therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

245.    Thereafter, CSX accused Plaintiff Cleatis Webb of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was January 12 to February 23, 2018.

246.    CSX had no reason to believe Plaintiff Cleatis Webb was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF JEFFREY WHISNER

247.    Plaintiff Jeffrey Whisner's mother suffers from a serious health condition within the FMLA's meaning.

248.    Plaintiff Jeffrey Whisner had requested intermittent FMLA leave so that he could care for his mother when his mother's serious health condition so necessitated.

249.    CSX approved Plaintiff Jeffrey Whisner's request for intermittent FMLA leave.

250.    Since then, Plaintiff Jeffrey Whisner has submitted the paperwork necessary to maintain his intermittent FMLA leave.

251.    CSX's policy of calculating FMLA leave by the day rather than by the hour caused Plaintiff Jeffrey Whisner to be charged with using more FMLA leave than he had, in fact, taken.

252.    Plaintiff Jeffrey Whisner's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

253.    From December 24, 2017 at 10:01 a.m. to December 26, 2017 at 6:44 p.m., the serious health of Plaintiff Jeffrey Whisner's mother necessitated Plaintiff Jeffrey Whisner taking time off work.

254.    Plaintiff Jeffrey Whisner therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

255.    Thereafter, CSX accused Plaintiff Jeffrey Whisner of abusing his intermittent FMLA leave and terminated him.

256.    CSX had no reason to believe Plaintiff Jeffrey Whisner was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## CLASS ALLEGATIONS

257.    Plaintiffs bring FMLA claims against CSX pursuant to Federal Rule of Civil Procedure 23, seeking back pay, monetary relief, other compensatory relief, and injunctive and declaratory relief on behalf of themselves and the following classes:

**Miscalculation Class:**

Individuals who, at any time from three years preceding the complaint's filing to the resolution of this action, had their FMLA leave counted by increments larger than one hour or the smallest increment of time in which CSX calculates non-FMLA leave, whichever is less.

**Attendance Points Class:**

Individuals who, at any time from three years preceding the complaint's filing to the resolution of this action, had attendance points remain on their record solely because they took FMLA leave.

**Discipline or Termination Class:**

Individuals who, at any time from three years preceding the complaint's filing to the resolution of this action, were disciplined or terminated for using FMLA leave.

Plaintiffs reserve the right to revise these class definitions based on discovery or other legal developments.

258.    Class treatment is appropriate because the class is so numerous that joinder of all members is impracticable. The exact number within the class is unknown, but it may be determined from records maintained by CSX.

259.    Class treatment is appropriate because there are questions of law or fact common to the class, including the following:

        a.    whether CSX engaged in a pattern and practice of retaliation against class members on the basis of their use of FMLA leave or interfered with class members' use of FMLA leave;

        b.    whether CSX's companywide policy of disciplining employees for using FMLA leave on a weekend or what CSX considers a holiday violates the

FMLA;

c.  whether CSX's companywide policy of counting FMLA use by the day and not the hour violates the FMLA;

d.  whether CSX's companywide policy of disqualifying employees who take FMLA leave from having the attendance points expunged violates the  FMLA;

e.  whether monetary damages, injunctive relief, and other equitable remedies are warranted; and

f.  whether punitive damages are warranted.

260.    Class treatment is appropriate because CSX will raise common defenses to the claims.

261.    Class treatment is appropriate because Plaintiffs are typical of the class's claims, and Plaintiffs will fairly and adequately protect the class's interests.

262.    Class treatment is appropriate because Plaintiffs have retained counsel who are competent, experienced in litigating class actions, and will effectively represent the interests of the class.

263.     Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(1) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for CSX and/or would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

264.    Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(2) because CSX has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

265.    Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact, including those listed above, predominate over any questions affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

266.    Class treatment of is appropriate under Federal Rule of Civil Procedure 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of the parties and the Court.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FMLA—INTERFERENCE

267.    The FMLA entitles employees to up to twelve weeks of leave during any twelve-month period for certain reasons, including the employee's serious health condition. *See* 29 U.S.C. § 2612(a)(1).

268.    The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." *See* 29 U.S.C. § 2615(a)(1).

269.    CSX interfered with, restrained, and denied the exercise of the protected rights of Plaintiffs and the putative class members when it, among other things, miscounted the amount of FMLA leave they used, disqualified them from having attendance points expunged, charged them with a workplace rule violation for using taking FMLA leave, removed them from service for the supposed violations, and disciplined them for using FMLA leave.

270.    Because CSX violated the FMLA, Plaintiffs and the putative class members are entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional

distress damages, declaratory and injunctive relief, reinstatement, and other damages. Plaintiffs and the putative class members are also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

271.    CSX committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of Plaintiffs and the putative class. As a result, Plaintiffs and the putative class members are entitled to punitive damages.

**COUNT II**
**VIOLATIONS OF THE FMLA—DISCRIMINATION**

272.    The FMLA makes it is unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." *See* 29 U.S.C. § 2615(a)(2).

273.    CSX discriminated against Plaintiffs' and the putative class members' rights under the FMLA when, among other things, it disqualified them from having attendance points expunged, charged them with a workplace rule violation for using taking FMLA leave, removed them from service for the supposed violations, forced them to defend themselves from such charges by having them submit more information about the condition that necessitated their FMLA leave than is allowed under the law, and disciplined them for taking FMLA leave.

274.    Because CSX violated the FMLA, Plaintiffs and the putative class members are entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. Plaintiffs and the putative class members are also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

275.    CSX committed the above-alleged acts with reckless or deliberate disregard for the

rights and safety of Plaintiffs and the putative class. As a result, they are entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all class members, pray for relief as follows:

A.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.     Designation of Plaintiffs as the representatives of the Classes, and Plaintiffs' counsel as Class Counsel;

C.     An order expunging all discipline related to the use of FMLA from each of Plaintiffs' and the putative class members' work records, and reinstating those Plaintiffs and putative class members for whom such discipline resulted in termination;

D.     An order requiring CSX to pay to Plaintiffs and the putative class members an award for compensatory damages, damages for loss of income, back pay, lost benefits, consequential damages, front pay, liquidated damages, and other damages in an amount to be determined by the trier of fact;

E.     An order requiring CSX to pay to Plaintiffs and the putative class members an award for garden-variety emotional distress;

F.     An order requiring CSX to pay to Plaintiffs and the putative class members an award for costs (including litigation and expert costs), disbursements, interest, and attorneys' fees;

G.     An order enjoining CSX from miscounting FMLA leave and declaring such conduct to be in violation of the FMLA;

H.     An order enjoining CSX from disqualifying employees who take FMLA leave from having their attendance points reduced and declaring such conduct to be in violation of the FMLA;

I.     An order enjoining CSX to cease engaging in a pattern and practice of retaliating against employees for taking FMLA leave and declaring such conduct to be in violation of the FMLA;

J.      Leave to amend the complaint, including to assert claims under the ADA after those claims have been administratively exhausted; and

K.      Such other relief as the Court deems just and proper.


Date:   March 13, 2018

Respectfully submitted,


/s/ P. Matthew Darby
P. Matthew Darby
(Federal Bar #: 5980)
BERMAN, SOBIN, GROSS, FELDMAN
& DARBY, LLP
1301 York Road, Suite 600
Lutherville, MD 21093
Telephone: (410) 769-5400
Facsimile: (410) 769-9201
pmdarby@bsgfdlaw.com
*Counsel for Plaintiffs*


/s/ Nicholas D. Thompson
Nicholas D. Thompson (admission pending)
THE MOODY LAW FIRM
500 Crawford Street, Suite 200
Portsmouth, VA 23704
Telephone: (757) 393-4093
Facsimile: (757) 397-7257
nthompson@moodyrrlaw.com


Adam W. Hansen (admission pending)
APOLLO LAW LLC
400 South 4th Street
Suite 401M - 250
Minneapolis, MN 55415
Telephone: (612) 927-2969
Facsimile: (419) 793-1804
adam@apollo-law.com