UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JUSTIN FORINGER and
MARK INGHAM,

Plaintiffs,

-v- 5:24-CV-1442 (DNH/MJK)

CSX TRANSPORTATION INC.,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| CASEY JONES LAW FIRM<br>Attorneys for Plaintiffs<br>525 Junction Road, Suite 6500<br>Madison, WI 53717 | GRACIE L. WENDT, ESQ. |
| CASEY JONES LAW FIRM<br>Attorneys for Plaintiffs<br>323 N. Washington Ave., Suite 200<br>Minneapolis, MN 55401 | NICHOLAS D. THOMPSON, ESQ. |
| BAILEY, JOHNSON & PECK, P.C.<br>Attorneys for Plaintiffs<br>5 Pine West Plaza, Suite 507<br>Washington Avenue Extension<br>Albany, NY 12205 | JOHN W. BAILEY, ESQ. |
| NIXON PEABODY LLP<br>Attorneys for Defendant<br>40 Fountain Plaza, Suite 500<br>Buffalo, NY 14202-2224 | SUSAN C. RONEY, ESQ. |

JONES DAY
Attorneys for Defendant
51 Louisiana Avenue, NW
Washington, DC 20001

THOMAS R. CHIAVETTA, ESQ.

JONES DAY, ATLANTA
Attorneys for Defendant
1221 Peachtree Street N.E., Suite 400
Atlanta, GA 30361

PATRICK M. CORLEY, ESQ.

DAVID N. HURD
United States District Judge

**DECISION & ORDER**

## I. INTRODUCTION

On March 13, 2018, plaintiffs, a large group of current and former employees of defendant CSX Transportation, Inc. ("CSX" or "defendant"), filed this civil action in the United States District Court for the District of Maryland alleging violations of the Family and Medical Leave Act of 1993 ("FMLA"). Dkt. No. 1. Briefly stated, the complaint alleged that CSX improperly disciplined them for taking FMLA leave during the end-of-year holiday period spanning from late 2017 through early 2018. *See id.*

On November 26, 2024, after lengthy and complicated procedural history, the U.S. District Court in Maryland issued an order pursuant to 28 U.S.C. § 1404(a) transferring each remaining plaintiff's case who was *not* a Maryland

resident to "their respective home federal district courts." Dkt. No. 128).[1] As relevant here, the cases brought by plaintiffs Hank Crossman, Jr. ("Crossman"), Justin Foringer ("Foringer"), Mark Ingham ("Ingham"), and Kevin Van Wagenen ("Van Wagenen") were transferred to this Court. Dkt. No. 129.

On January 13, 2025, Crossman, Foringer, Ingham, and Van Wagenen filed a second amended complaint, which is now the operative pleading. Dkt. No. 153. Thereafter, CSX moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. No. 181. Defendant also moved to exclude the testimony of plaintiffs' expert witness, Beth De Lima, pursuant to Federal Rule of Evidence 702. Dkt. No. 182.

On March 9, 2026, while these motions were pending, Crossman and Van Wagenen stipulated to the dismissal of their claims, Dkt. No. 188, which this Court so-ordered on March 11, 2026, Dkt. No. 190. Accordingly, Foringer and Ingham are the only two remaining plaintiffs. *See id.*

The motions have been fully briefed, Dkt. Nos. 183, 184, 192, 193, and will be considered on the basis of the submissions without oral argument.

[1] The trial court in Maryland provided a more detailed recitation of this case's complex procedural history in its written opinion denying defendant's prior motion for summary judgment. *See Bell v. CSX Transportation, Inc.*, 733 F. Supp. 3d 385, 388 (D. Md. 2024). It is incorporated by reference here.

## II. BACKGROUND

Pursuant to Local Rule 56.1, the following facts are drawn from the parties' statements of material facts and the attached exhibits and are undisputed unless otherwise noted.

CSX is a large corporation that operates freight railroads across the United States and is headquartered in Florida. Def.'s Statement of Material Facts, Dkt. No. 181-2 ("Def.'s SOMF") ¶ 1. CSX employs approximately 20,000 people, *id.*, and operates 24 hours per day and 365 days per year to meet its demand. *Id.* ¶ 4.

Foringer and Ingham (collectively "plaintiffs") worked for CSX as train & engine ("T&E") employees. Def.'s SOMF ¶¶ 3, 22–23, 44–45; Tingley Decl., Dkt. No. 181-25 ¶ 2. Specifically, plaintiffs both worked in CSX's Northeast Region as locomotive engineers. Def.'s SOMF ¶¶ 2–3. The terms of plaintiffs' employment with CSX were governed by collective bargaining agreements ("CBAs"). Def.'s SOMF ¶ 2.

Due to the around-the-clock nature of CSX's business, "[m]ost T&E employees work on call; they do not have a set schedule." Def.'s SOMF ¶ 5. That said, federal law requires each T&E employee to enjoy at least ten consecutive hours of rest between on-duty periods. *Id.*

Some T&E employees are assigned to a "pool" that operates between two locations: (1) the employee's home terminal; and (2) an away-from-home

terminal. Def.'s SOMF ¶ 5. These employees are listed on a rotating board based on when they last worked a shift. *Id.* ¶ 6. When a train is ready for departure, the employee whose name is at the top of the board is called to bring it to the away-from-home terminal. *Id.*

Because most T&E employees are on call 24 hours per day and seven days per week, they must always be "marked up" when ready to work unless they are "marked off" or on rest. Def.'s SOMF ¶ 7; *see, e.g.*, Dkt. No. 181-13 ("Ingham Dep.") at 14.[2] As relevant here, employees can "mark off" for, *inter alia*, vacation, personal leave, and sick leave. Def.'s SOMF ¶ 8.

However, CSX limits how many employees may take vacation and personal leave at any given time. Def.'s SOMF ¶ 8. While sick leave is not limited in this way, "marking off" as sick results in an employee receiving "points" under CSX's attendance policy that can lead to future discipline. *Id.*

Conversely, employees who have been approved for FMLA leave can use it as needed without being assigned attendance points. Def.'s SOMF ¶¶ 8–9; Dkt. No. 181-4 ("Foringer Dep.") at 24. Employees may take FMLA leave for their own health conditions or to help care for family members with medical needs. 28 U.S.C. § 2612(a)(1). Once an employee has been approved for FMLA

---

[2] Pagination corresponds to the electronically generated CM/ECF headers.

leave, he can "mark off" by calling Crew Management or by using an app on his cell phone called Crew Life. Def.'s SOMF ¶ 9.

To obtain approval for FMLA leave, CSX employees are required to fill out a medical certification form. Dkt. No. 181-29 ("Johnson Dep.") at 10. This form requires employees to be "as specific as [they] can" to a series of questions about their—or their family members'—medical condition for which they are seeking FMLA leave. *See, e.g.*, Dkt. No. 181-5 at 1. This includes the nature of the underlying medical condition, the treatment regimen and schedule, and the amount and frequency of leave the employee is requesting. *Id.* at 1–2. A healthcare provider must also sign the form to certify its accuracy. *Id.* at 2.

Once an employee submits a medical certification form, a third-party vendor reviews the form and determines if the employee qualifies for FMLA leave. Johnson Dep. at 10. In close cases, *i.e.*, "if the vendor is questioning" the request, CSX's FMLA administrator decides if FMLA leave should be approved. *Id.*

CSX's Individual Development and Personal Accountability Policy ("IDPAP") prohibits employees from engaging in certain behavior including dishonesty, which it classifies as a fireable offense. *See* Dkt. No. 181-30 ("IDPAP") at 1–2. Using FMLA leave solely to extend time off by "marking off" on or around

holidays, weekends,[3] vacation time, or rest days constitutes dishonesty in violation of the IDPAP. Dkt. No. 181-16 at 16; Johnson Dep. at 16.

In 2016, CSX FMLA manager Jolanda Johnson led the development of an automated system that was designed to detect FMLA misuse. Johnson Dep. at 3, 12. On a weekly basis, this system reviews each employee's FMLA usage over the preceding twelve weeks. *Id.* at 11. If an employee has used FMLA leave to extend weekend time or other time off at least four times during that time frame, Johnson receives an e-mail identifying the employee as someone she should review for potential FMLA misuse. *Id.* at 16, 26.

After Johnson receives notification that an employee might be misusing FMLA leave, she conducts an "individualized review" of their medical information, the absences that were "identified as pattern use," and "the statuses of those absences." Johnson Dep. at 22. If Johnson receives information that an employee's social media accounts have been active while they are marked off on FMLA leave, their accounts are reviewed. *Id.* Additionally, CSX sometimes hires a private investigator to follow employees suspected of FMLA misuse. *Id.*

Once Johnson determines an employee has demonstrated a pattern of misuse, the employee receives a warning letter notifying them that they are

[3] CSX defines weekend days as Fridays, Saturdays, and Sundays. Johnson Dep. at 16.

suspected of FMLA misuse and that their usage will continue to be monitored. Johnson Dep. at 26.

After the first warning letter is mailed, the look-back period is shortened to eight weeks. Johnson Dep. at 26. If the employee incurs three or more incidents of misuse during an eight-week period, another warning letter is sent to inspire "corrective" action. *Id.* After four such warnings, the employee will ordinarily be terminated. *Id.*

In addition, CSX has a disciplinary process in place for employees thought to have engaged in misconduct in violation of the IDPAP, including dishonesty. Def.'s SOMF ¶ 11. An employee suspected of engaging in dishonesty is charged with an offense and must attend a disciplinary hearing on the charges. *Id.*

These disciplinary hearings are conducted by a CSX manager. Def.'s SOMF ¶ 12; Johnson Dep. at 34; Dkt. No. 192-3 ("Jones Decl.") ¶ 5. The hearing officer presides over the hearing, questioning witnesses and ruling on evidentiary objections. Def.'s SOMF ¶ 11. Hearing officers are not lawyers or labor relations officials. Jones Decl. ¶ 5. As such, CSX provides them with a "Hearing Officer Guide" which contains guidance on best practices for conducting a hearing, including what evidence should be admitted. *Id.* ¶ 6. The guide is not binding on hearing officers, and they are "empowered to weigh the evidence as they see fit." *Id.* CSX bears the burden of proving the charges by

"substantial evidence" and "the likelihood of success in arbitration." Dkt. No. 183-8 ("Wheaton Dep.") at 5.

During the hearing, the charging officer typically testifies first about the basis for the charges. Jones Decl. ¶ 4. The charged employee may be represented by a union official and can testify and present evidence in his own defense. Def.'s SOMF ¶ 12. The Labor Relations department or other CSX officials provide the hearing officer with a list of questions to ask the charging officer. Jones Decl. ¶ 5. This list of questions is not provided to the charged employee or his union representative, but the exhibits CSX plans to use may be made available to them by request. Johnson Dep. at 34, 53–54.

Discipline is not assessed or decided upon at the hearing. Def.'s SOMF ¶ 13. However, after the hearing concludes, the hearing officer may issue recommendations or findings. *Id.* Disciplinary decisions are made by the General Superintendent for the Region (or a designee) after receiving a recommendation from the Labor Relations Department. *Id.* Generally, discipline must be assessed within 30 days of the hearing. *Id.* ¶ 15.

According to CSX, an employee who is disciplined after a hearing can appeal and have his claim heard by a neutral arbitrator. Def.'s SOMF ¶ 14. Plaintiffs dispute that any arbitrator is truly neutral because CSX "controls the disciplinary process," so "the imposition of discipline is affirmed in virtually all appeals." Dkt. No. 183-1 ("Pls.' Resp. SOMF") ¶ 14.

During the holiday season of December 2017 through January 2018, Johnson noticed that a sizable percentage of T&E employees had "marked off" for FMLA leave, which she believed was abnormal. Dkt. No. 181-18 ("Johnson Decl.") ¶ 2. For example, on December 25, 2017, approximately 800 employees (close to 10% of the T&E workforce) "marked off" on FMLA leave. *Id.* More than half of these employees had marked back up for work by the evening of December 26. *Id.* Then, on January 1, 2018, over 400 T&E employees "marked off" on FMLA leave. *Id.* More than half of these employees had marked back up for work by the evening of January 2. *Id.*

Johnson compared these numbers with the number of employees "marked off" for FMLA leave in the weeks prior and noted that, as an example, less than 200 T&E employees were marked off on FMLA leave on December 18, 2017. Johnson Decl. ¶ 2. Based on this apparent disparity, Johnson believed that some employees had misused their FMLA leave by "marking off" between December 22, 2017 and January 2, 2018 and decided to investigate the mark-offs. *Id.* ¶¶ 3–5.

To complete this investigation, Johnson, the CSX Labor Relations Department, and the Law Department used a modified version of CSX's typical algorithm to review each flagged employee's recent FMLA leave history to determine whether it presented a pattern of use on holidays or "other special occasions." Johnson Decl. ¶ 3. In particular, CSX reviewed mark-offs on

Father's Day, July 4, Labor Day, Columbus Day, Halloween, Veterans Day, Thanksgiving Day, Black Friday, Christmas Eve, Christmas Day, New Year's Eve, and New Year's Day. *Id.*

If an employee had "marked off" for FMLA leave on four or more of these occasions, the employee was automatically charged with dishonesty and immediately removed from service pending a hearing unless the employee's medical condition, in Johnson's opinion, "clearly explained" the mark-offs. Johnson Decl. ¶ 3. According to Johnson, FMLA use was only "clearly explained" if the justification was cancer, a terminal illness, or childbirth within two weeks. Johnson Dep. at 37. Plaintiffs dispute that Johnson was qualified to determine what would constitute a clear explanation for a mark-off, as she does not have a medical background. Pls.' Resp. SOMF ¶ 19.

Defendant claims that it conducted an "individualized review" of each flagged T&E employees' FMLA use before charging them with dishonesty for their conduct during the 2017–2018 holiday season. Def.'s SOMF ¶ 21. But plaintiffs dispute that CSX conducted any such review beyond Johnson's algorithm's output. Pls.' Resp. SOMF ¶ 21.

For example, plaintiffs point out that CSX's algorithm did not "evaluate their general leave usage on non-holidays, nor did it account for holidays [they] *did* work." Pls.' Resp. SOMF ¶ 21. Plaintiffs further highlight that CSX did

not use "the panopoly of investigative measures at its disposal" including private investigators. *Id.*; Dkt. No. 183-3 ("Johnson 2025 Dep.") at 21.

Over 1,000 T&E employees used FMLA leave between December 22 and 26, 2017. Def.'s SOMF ¶ 19; Johnson Decl. ¶ 4. Of those, CSX charged 123 employees for using FMLA leave dishonestly, and 81 were disciplined. Johnson Decl. ¶ 4. Over 500 T&E employees used FMLA leave between December 30, 2017 and January 2, 2018. *Id.* ¶ 5. Of those, CSX charged 54 employees for using FMLA leave dishonestly, and 38 were disciplined. *Id.*

With this general background established, the Court will turn to the undisputed facts regarding each plaintiff's employment, FMLA use, and termination.

**A. Foringer**

Foringer worked for CSX, first as a conductor and later as an engineer, from October 2004 to February 2018. Def.'s SOMF ¶ 22; Foringer Dep. at 17–18; Dkt. No. 181-12. His home terminal was in Syracuse, New York, and he was assigned to a pool that ran between Syracuse and Selkirk, New York. Def.'s SOMF ¶ 23. Foringer had one scheduled rest day per week. *Id.*

Foringer suffers from anxiety and depression. Foringer Dep. at 34. He initially applied and was approved for FMLA leave in approximately 2011 for these diagnoses. Def.'s SOMF ¶ 24; Foringer Dep. at 34, 46. Foringer used FMLA leave for several years prior to his dismissal. Def.'s SOMF ¶ 24. During

this time, he submitted multiple certifications from his doctor to verify his continued need for FMLA leave at CSX's request. *See, e.g.*, Foringer Dep. at 58–69. As relevant here, in August 2017, Foringer's doctor estimated that he would need to take FMLA leave for three to four episodes per year, one day per episode. Def.'s SOMF ¶ 25.

In November 2016, Foringer received a warning letter for what CSX believed was a suspicious pattern of FMLA use. Def.'s SOMF ¶ 28; Foringer Dep. at 46. This "established pattern," CSX wrote, consisted of seven weekend or holiday mark-offs over a ten-week period, including several mark-offs immediately before or after Foringer's rest day, thereby extending his time off work. Def.'s SOMF ¶ 28; Dkt. No. 181-7 at 2, 4.

The November 2016 letter warned Foringer that his FMLA leave would continue to be monitored, and that continued misuse could subject him to discipline. Def.'s SOMF ¶ 28. The letter also directed Foringer to contact CSX with questions or concerns, or documentation of extenuating circumstances to "support [his] pattern use described" in the letter. Dkt. No. 181-7 at 2. Foringer did not respond. Def.'s SOMF ¶ 28.

In May 2017, Foringer received a second letter marked as a "final warning." Def.'s SOMF ¶ 29; Foringer Dep. at 46. In this letter, CSX informed Foringer that it had "determined that [he] ha[d] not addressed the behaviors outlined in the warning letter previously sent to [him]" based on his continued

use of FMLA leave "in conjunction with other days off." Dkt. No. 181-8 at 2. The letter warned that if Foringer continued "misusing FMLA," he could be "subject to a charge and formal disciplinary hearing." *Id.* Like the first warning letter, this letter instructed Foringer to contact Johnson with questions or documentation demonstrating extenuating circumstances. *Id.* Foringer did not respond. Def.'s SOMF ¶ 29.

On December 24, 2017, after two rest days, Foringer "marked off" on FMLA leave at 4:02 a.m. and marked back up on December 26 at 10:13 a.m. Def.'s SOMF ¶ 30; Dkt. No. 181-9. He "marked off" on FMLA leave again on the evening of December 26 and marked back up on the morning of December 27. Foringer Dep. at 97–99.

Based on the timing of Foringer's mark-off from December 24 through December 26, in addition to his mark-offs during the 2017 Labor Day and Veterans Day weekends, CSX believed that he demonstrated a pattern of using FMLA leave to extend his time off and avoid working on certain holidays and weekend days.[4] Def.'s SOMF ¶¶ 32–33; Johnson Decl. ¶ 11. CSX charged Foringer with dishonesty for misusing FMLA leave and removed him from service on January 2, 2018, pending a hearing. Def.'s SOMF ¶ 33; Foringer Dep. at 101.

---

[4] As mentioned above, plaintiffs dispute that CSX could have detected a pattern of FMLA misuse because its algorithm did not take into account employees' FMLA use on non-holidays. Pl.'s SOMF ¶ 33.

Foringer's hearing was held on January 10, 2018, with CSX Trainmaster Josue Villegas presiding as the Hearing Officer. Def.'s SOMF ¶ 35; Dkt. No. 181-11 ("Foringer Hearing Tr.") at 1. Foringer was represented by Harvey Benn ("Representative Benn"), a union representative for the Brotherhood of Locomotive Engineers and Trainmen ("BLET"). Foringer Hearing Tr. at 2.

CSX's Manager of Field Administration, Anita Tingley, testified at the hearing. Def.'s SOMF ¶ 34. When asked about the basis for the charges, Tingley referred to a report showing the timing of Foringer's mark-offs over Labor Day weekend, Veterans Day weekend, Christmas Eve, and Christmas Day. *Id.* Tingley also noted that Foringer had already received two prior warnings regarding his FMLA usage. *Id.* Additionally, Tingley pointed to the overall spike in FMLA leave usage among T&E employees on December 23 through 25 as circumstantial evidence. Foringer Hearing Tr. at 13–14.

Tingley noted that Foringer did not provide CSX with any documentation to support his mark-offs on holidays. Foringer Hearing Tr. at 16. Tingley further testified that, while she had no affirmative proof that Foringer had not had a medical episode over the Christmas holiday, the "facts and circumstances" of the case "support[ed] the conclusion that he used FMLA leave to avoid working on the holiday." *Id.* at 22.

Foringer, for his part, disputes that the circumstances of the case could have shown that he misused FMLA leave. Pl.'s SOMF ¶ 21. As he points out,

CSX searched Foringer's social media accounts for evidence of FMLA misuse during the Christmas holiday and found none. *Id.* Tingley did not mention the search or the absence of incriminating evidence during Foringer's hearing. *Id.* (citing Johnson Dep. at 54).

After Tingley finished testifying and was cross-examined, Hearing Officer Villegas offered Representative Benn an opportunity to question Foringer. Foringer Hearing Tr. at 28. Representative Benn asked Foringer two questions:

> Benn: Mr. Foringer, did you have a health condition to make you mark off FMLA on the dates provided here today?
>
> Foringer: Yes.
>
> Benn: Are you certified for those?
>
> Foringer: Yes.
>
> Benn: That'd be all. I'd like to close out if we may.

*Id.*

Hearing Officer Villegas also offered Foringer the opportunity to make a statement on his own behalf, which he declined. Def.'s SOMF ¶ 35. Neither Foringer nor Representative Benn offered any documents or called any witnesses. *Id.* ¶ 36. Following the hearing, Hearing Officer Villegas determined that the charges had been proven. *Id.* ¶ 37.

CSX Assistant Superintendent Jason Hilmanowski reviewed the hearing transcript and Hearing Officer Villegas's determination and decided that Foringer should be terminated. Def.'s SOMF ¶ 38. CSX Labor Relations Manager Penny Dreher agreed with Superintendent Hilmanowski's decision because Foringer had received two prior FMLA warning letters and "presented no evidence during the hearing to prove that he had a legitimate medical issue on 12/24." *Id.* ¶ 39.

Foringer was terminated for violating CSX's dishonesty policy effective February 7, 2018. Def.'s SOMF ¶ 40; Dkt. No. 181-12. Foringer's union challenged his dismissal. Def.'s SOMF ¶ 41. A purportedly neutral arbiter reviewed the same evidence as CSX, concluded that CSX had "substantial evidence" to support its charge against Foringer, and upheld his dismissal. *Id.* ¶¶ 41–43.

**B. Ingham**

Ingham worked for CSX, first as a conductor and later as an engineer, from 1998 through March 2018. Def.'s SOMF ¶ 44; Ingham Dep. at 4; Dkt. No. 181-44. His home terminal was Selkirk, New York, and he was assigned to a pool that operated between Selkirk and New Jersey. Def.'s SOMF ¶ 45. Ingham had one scheduled rest day per week and was on call for the remaining six days. *Id.*

Ingham suffers from anxiety and depression. Def.'s SOMF ¶ 46; Ingham Dep. at 7–8. He initially applied and was approved for FMLA leave in approximately 2006 for these diagnoses. Def.'s SOMF ¶ 46; Ingham Dep. at 7. Ingham used FMLA leave for several years prior to his dismissal. Def.'s SOMF ¶ 46. During this time, he submitted multiple certifications from his doctor to verify his continued need for FMLA leave at CSX's request. *See, e.g.*, Ingham Dep. at 8–9. As relevant here, in February 2017, Ingham's doctor estimated that he would need to take FMLA leave for three episodes per month, three days per episode. Def.'s SOMF ¶ 47; *see generally* Dkt. No. 181-14.

In June 2017, Ingham received a warning letter for what CSX believed was a suspicious pattern of FMLA use. Def.'s SOMF ¶ 48; Ingham Dep. at 11–12. This "established pattern," CSX wrote, consisted of five mark-offs immediately before or after Ingham's scheduled rest day over a ten-week period. Def.'s SOMF ¶ 48; Dkt. No. 181-7 at 2, 4.

The June 2017 letter warned Ingham that his FMLA leave would continue to be monitored, and that continued misuse could lead to discipline. Def.'s SOMF ¶ 48. The letter directed Ingham to contact CSX with questions or concerns, or documentation of extenuating circumstances to "support [his] pattern use described" in the letter. Dkt. No. 181-24 at 2. Ingham did not respond because he did not know what kind of proof to provide given the nature of his condition. Def.'s SOMF ¶ 48; Ingham Dep. at 13.

Several months later, Ingham "marked off" on FMLA leave on December 23, 2017 at 7:28 p.m. and marked back up on December 25 at 5:25 p.m. Def.'s SOMF ¶ 49; Dkt. No. 181-22. Ingham had two scheduled rest days on December 28 and 29. Def.'s SOMF ¶ 51. On December 30, he "marked off" on FMLA leave at 12:11 a.m. and marked back up on December 31 at 11:51 p.m., right before a scheduled personal day on January 1, 2018. *Id.*; Dkt. No. 181-23.

Based on the timing of these mark-offs, in addition to Ingham's mark-offs during other 2017 holidays including Father's Day weekend, Halloween, Thanksgiving, and Black Friday, CSX believed that he demonstrated a pattern of using FMLA leave to extend his time off and avoid working on certain holidays and weekend days. Def.'s SOMF ¶¶ 52–54; Johnson Decl. ¶ 11.

CSX charged Ingham with dishonesty for misusing FMLA leave during the Christmas holiday and removed him from service on January 2, 2018, pending a hearing. Def.'s SOMF ¶ 54; Dkt. No. 181-35 ("Ingham Christmas Tr.") at 2. CSX also charged Ingham with misusing FMLA leave on New Year's Eve and scheduled a separate hearing on that charge. Def.'s SOMF ¶ 55.

Ingham's Christmas hearing was held on January 12, 2018, with CSX Trainmaster Leo Haines presiding as the Hearing Officer ("Hearing Officer Haines"). Def.'s SOMF ¶ 60; Ingham Christmas Tr. at 1. Ingham was represented by Mark Krajewski ("Representative Krajewski"), a union representative for the BLET. Ingham Christmas Tr. at 3–4.

CSX Human Resource Business Partner Tremaylen Anderson and Chief Train Dispatcher Mark Lawrenson testified at the hearing for CSX. Def.'s SOMF ¶ 56; Ingham Christmas Tr. at 7, 10. When asked about the basis for the charges, Anderson referred to a report showing the timing of Ingham's mark-offs over Christmas and other holidays in 2016 and 2017. Def.'s SOMF ¶ 56; Ingham Christmas Tr. at 12.

Anderson noted that Ingham did not provide CSX with any documentation to support his mark-offs on holidays. Ingham Christmas Hearing Tr. at 18. Anderson further testified that, while she was "not disputing that Mr. Ingham had an episode" between December 22 and 26, "based on the facts and circumstances" of the case, "it is clear that the employee misused FMLA to avoid working over the Christmas holiday." *Id.* at 23.

Ingham disputes that the circumstances of the case could have shown that he misused FMLA leave. Pl.'s SOMF ¶ 21. As he points out, CSX searched his social media accounts for evidence of FMLA misuse during the Christmas holiday and found none. *Id.* Neither of the witnesses for CSX mentioned the search or the absence of incriminating evidence during Ingham's hearing. *Id.* (citing Johnson Dep. at 54).

After Anderson finished testifying and was cross-examined, Hearing Officer Haines and Representative Krajewski each questioned Ingham. Ingham Christmas Tr. at 28–34. Ingham maintained that he solely used FMLA leave

for his approved diagnoses and noted that he used less than his approved amount (three days per episode) when he "marked off" between December 23 and 25. *Id.* at 29–32. Representative Krajewski also made a statement on Ingham's behalf and pointed out that Ingham marked up on December 25 "after his flare-up went down" and "took a train on Christmas night." *Id.* at 35.

Following the Christmas hearing, Hearing Officer Haines determined that the FMLA misuse charge was not proven, reasoning that Ingham was approved to use FMLA for three episodes per month up to three days each, and he marked off within these guidelines due to a medical episode. Dkt. No. 181-36.

CSX Labor Relations Manager Lindsay O'Brien reviewed the record and disagreed with Hearing Officer Haines, instead believing the charge had been proven. Dkt. No. 181-37. O'Brien suggested that Ingham be suspended and that discipline could be revisited pending the outcome of the hearing on his New Year's charge. Dkt. No. 181-37. Assistant Superintendent Hilmanowski agreed and issued a suspension. *Id.*; Dkt. No. 181-38; Dkt. No. 181-39.

Ingham's New Year's hearing was held on January 31, 2018 with CSX Trainmaster Steven Whitman presiding as the Hearing Officer ("Hearing Officer Whitman"). Def.'s SOMF ¶ 64; Dkt. No. 181-40 ("Ingham New Year's Tr.") at 1. Ingham was again represented by Representative Krajewski. Ingham New Year's Tr. at 3.

Anderson was CSX's primary witness at the New Year's hearing. Def.'s SOMF ¶ 64. When asked about the basis for the charges, Anderson testified that they were based on "an individualized review of [Ingham's] FMLA history." Ingham New Year's Tr. at 19. She pointed to his other holiday mark-offs in 2017 and introduced evidence that he had taken FMLA leave on New Year's Eve for each of the past three years. Def.'s SOMF ¶ 64.

Anderson noted that Ingham did not provide CSX with any documentation to support his mark-offs on holidays. Ingham New Year's Tr. at 17. Anderson further testified that, while "Mr. Ingham could have possibly had an episode" on New Year's Eve, the facts presented "show[ed] that Mr. Ingham used FMLA to avoid working over the New Year's holiday." *Id.* at 20.

Ingham testified that he marked off FMLA on New Year's Eve because of an "episode" associated with his approved diagnoses. Ingham New Year's Tr. at 25. He did not introduce any other evidence or call any other witnesses to substantiate his need for FMLA leave. *Id.* at 29.

Hearing Officer Whitman found that the charges were proven, reasoning that Ingham's history of marking off FMLA on New Year's Eve in prior years damaged his credibility. Def.'s SOMF ¶ 68. CSX Labor Relations Manager Penny Dreher agreed with Hearing Officer Whitman's decision because Ingham presented no evidence during the hearing to prove that he had a legitimate medical issue. Dkt. No. 181-34. Assistant Superintendent Hilmanowski

reviewed the hearing transcript and Hearing Officer Whitman's determination and decided that Ingham should be terminated. Def.'s SOMF ¶ 70.

Ingham was terminated for violating CSX's dishonesty policy effective March 2, 2018. Def.'s SOMF ¶ 71; Dkt. No. 181-44. Ingham's union challenged his suspension and termination. Def.'s SOMF ¶ 72. A purportedly neutral arbiter reviewed the same evidence as CSX and concluded that CSX had "substantial evidence" to support both the Christmas and New Year's charge against Ingham and upheld his suspension and dismissal. *Id.* ¶¶ 73–76.

## III. LEGAL STANDARD

The entry of summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is considered "genuine" when "the evidence is such that a reasonable jury could re-turn a verdict for the nonmoving party." *Id.*

In conducting this analysis, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255. Even so, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 588 (1986). Further, "[a] question of material fact does not exist merely because plaintiff disagrees with the deposition testimony and documentary evidence produced by defendant." *Turner v. Delta Airlines, Inc.*, 658 F. Supp. 3d 123, 131 (E.D.N.Y. 2023) (citing *Anderson*, 477 U.S. at 247–48).

"'The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists,' but 'when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to' an absence of evidence 'on an essential element of the nonmovant's claim.'" *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (quoting *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023)).

## IV. DISCUSSION[5]

Plaintiffs' amended complaint asserts FMLA claims for retaliation and interference. Dkt. No. 153. Defendant has moved for summary judgment against all of plaintiffs' claims. Dkt. No. 181-1.

First, as to plaintiffs' FMLA retaliation claim, defendant argues that (1) it disciplined plaintiffs based on a good-faith belief that they each used FMLA

[5] As the parties point out in their briefing and additional submissions made during the pendency of this motion, this case is one of many in which former CSX employees have alleged that they were disciplined or terminated for taking FMLA leave during the 2017–2018 holiday season. *See, e.g.*, *Burgess v. CSX Transportation, Inc.*, 2026 WL 1948129 (D. Md. July 6, 2026); *Pack v. CSX Transportation, Inc.*, 2026 WL 105022 (S.D.W. Va. Jan. 14, 2026), *clarified on denial of reconsideration*, 2026 WL 823721 (S.D.W. Va. Mar. 25, 2026); *Parker v. CSX Transportation, Inc.*, 2021 WL 3022703 (N.D. Ala. July 16, 2021); *Brown v. CSX Transportation, Inc.*, 2026 WL 178735 (M.D. Fla. Jan. 23, 2026). As these other courts have noted, each case must be decided based on the particular set of facts before the Court and the relevant Circuit authority. *See Lovelady v. CSX Transportation, Inc.*, 2026 WL 2965041, at *9 (N.D. Ala. Sept. 30, 2026).

leave dishonestly; and (2) plaintiffs cannot show that their discipline was pretextual. Dkt. No. 181-1 at 19. Second, defendant argues that plaintiffs' FMLA interference claim must be dismissed because it is duplicative of their retaliation claim under these circumstances. *Id.* at 34.

In opposition, plaintiffs argue that summary judgment is inappropriate because a reasonable jury could conclude that CSX "engaged in a sham mass-firing" as a means of retaliation and to "discourage its employees from utilizing FMLA on dates it deemed inconvenient." Dkt. No. 183 at 21–22.

The Family and Medical Leave Act entitles employees to take "reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). "The FMLA 'provides broad protections to employees who need to take time away from work to deal with serious health conditions of the employee or her family.'" *Haran v. Orange Bus. Servs., Inc.*, 160 F.4th 51, 56 (2d Cir. 2025) (quoting *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 165–66 (2d Cir. 2017)).

As relevant here, the FMLA entitles employees to take a total of twelve workweeks of leave during any twelve-month period because of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any

right provided under this subchapter," 29 U.S.C. § 2615(a)(1), which permits an employee to sue an employer for certain FMLA violations.

"FMLA claims come in at least two varieties: interference and retaliation." *Haran*, 160 F.4th at 56 (quoting *Woods*, 864 F.3d at 166). "Generally, 'an employee brings an 'interference' claim when [the] employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA.'" *Id.* "'Retaliation' claims, on the other hand, involve an employee actually exercising [his] rights . . . and then being subjected to some adverse employment action by the employer.'" *Id.*

Plaintiffs have raised both a retaliation and an interference claim under the FMLA. Dkt. No. 153 ¶¶ 89–95. The Court will address each in turn.

**A. Retaliation**

Defendant has moved for summary judgment on plaintiffs' FMLA retaliation claim, arguing that no reasonable jury could conclude that CSX disciplined plaintiffs in retaliation for their use of FMLA leave rather than its honest belief that they misused FMLA leave. Dkt. No. 181-1 ("Def.'s Mot.") at 19. Plaintiffs oppose, arguing that a reasonable jury could find that CSX retaliated against them and that "an employer's invocation of the honest belief rule does not automatically shield it from liability." Dkt. No. 183 ("Pls.' Opp.") at 13.

"To establish a prima faci[e] case of FMLA retaliation, a plaintiff must establish that 1) he exercised rights protected under the FMLA; 2) he was

qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016) (quoting *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (internal quotation marks omitted)).

FMLA retaliation claims are analyzed "under the burden-shifting test set forth in *McDonnell Douglas*," which instructs that "[i]f the plaintiff makes out a prima facie case, the defendant must demonstrate a legitimate, non-discriminatory reason for its actions." *Graziadio*, 817 F.3d at 429 (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996)); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant does so, the burden shifts back to the plaintiff, who "must then show that defendant's proffered explanation is pretextual." *Graziadio*, 817 F.3d at 429 (citing *Van Zant*, 80 F.3d at 714).

"Courts often refer to *McDonnell Douglas*'s burden-shifting standard as 'familiar'" because it is used in "evaluating employment discrimination and retaliation claims brought under a wide range of federal and state statutes." *Sparks v. New York Times Co.*, 2026 WL 2389222, at *8 (S.D.N.Y. Aug. 17, 2026) (collecting cases applying the *McDonnell Douglas* standard to, inter alia, FMLA, ADA, Title VII, and Section 1981 claims).

That said, the FMLA "diverges from some other discrimination statutes at the pretext stage of the *McDonnell Douglas* framework." *Sparks v. New York Times Co.*, 2026 WL 2389222, at *8. While some statutes require that discrimination be the but-for cause of the adverse employment action, FMLA claims are subject to the more lenient "motivating factor" standard. *Woods*, 864 F.3d at 166. Under that standard, a plaintiff need only demonstrate that the exercise of his FMLA rights "was a motivating factor in the defendant's adverse employment action." *Natofsky v. City of New York*, 921 F.3d 337, 347 (2d Cir. 2019).

As to the first step, CSX "does not appear to seriously argue" that plaintiffs has not established a prima facie case of FMLA retaliation.[6] *Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 337 (E.D.N.Y. 2010) (Bianco, J.); *see* Def.'s Mot. at 21. In any event, based on an independent review of the record and the evidence discussed *infra* in connection with the ultimate issue, the Court concludes that plaintiffs have established a prima facie case.

Thus, plaintiffs' FMLA retaliation claim hinges on whether CSX has articulated a legitimate, non-retaliation basis for discipline, and, if so, whether

[6] The only semblance of an argument CSX makes regarding plaintiffs' ability to make a prima facie case on either FMLA theory states that "[e]ven assuming" plaintiffs can make such a case, "their discrimination claim fails because CSX has articulated a legitimate, non-discriminatory reason for their discipline—dishonesty—and [p]laintiffs cannot show pretext." Def.'s Mot. at 21. This conclusory statement is rejected as unsupported by any actual argument.

plaintiffs have shown that the reasons given for their suspension and termination were actually pretext to cover a discriminatory motive.

The crux of CSX's argument is that it believed many of its employees, including plaintiffs, were abusing FMLA leave during the 2017 holiday season, and therefore, it had a legitimate, non-discriminatory reason for its actions regarding plaintiffs. See Def.'s Mot. at 21–22. However, viewing the facts in the light most favorable to plaintiffs, there are genuine issues of disputed fact regarding whether defendant believed in good faith that plaintiffs used their FMLA leave dishonestly and whether CSX claimed that plaintiffs misused their FMLA leave in terminating them as a pretext for retaliating against them for taking FMLA leave.

**1. Non-Discriminatory Reasons For The Adverse Employment Actions**

"Once the plaintiff has established a prima facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (citing *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011)). "An employer's 'explanation of its reasons must be clear and specific' in order to 'afford the employee a full and fair opportunity to demonstrate pretext.'" *Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 519 (E.D.N.Y. 2018) (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.*,

243 F.3d 93, 105 (2d Cir. 2001)). "Where an employer's explanation, offered in clear and specific terms, is reasonably attributable to an honest even though partially subjective evaluation of qualifications, no inference of discrimination can be drawn." *Id.* (internal quotations and citation omitted).

Defendant argues that its legitimate, non-discriminatory reason for its adverse employment actions against plaintiffs was to prevent FMLA abuse and to ferret out dishonesty amongst its employees. Def.'s Mot. at 21–22; *see also id.* at 27 ("CSX's disciplinary policy classifies dishonesty as a major offense that 'warrant[s] removal from service . . . and possible dismissal' . . . . it was [p]laintiffs' dishonesty—and not any retaliatory motive—that prompted their dismissal.").

Violating corporate policies and misusing FMLA leave constitute legitimate, non-discriminatory reasons for discipline. *Ireton-Hewitt v. Champion Home Builders Co.*, 501 F. Supp. 2d 341, 350 (N.D.N.Y. 2007) (citing *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 169 (2d Cir. 2001)); *see also Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 465 (S.D.N.Y. 2023) ("An employee's failure to follow established procedures governing absence from work or leave periods can be a legitimate—indeed, is a familiar—non-discriminatory basis for an adverse employment action.").

In short, defendant has satisfied its burden at this step. *See, e.g., Smith*, 286 F. Supp. 3d at 519 (finding defendant sufficiently articulated legitimate

reason where, *inter alia*, defendant presented evidence that plaintiff was lawfully terminated "for theft of time pursuant to an independent investigation").

**2. Pretext**

Because defendant has proffered a legitimate, non-discriminatory reason for plaintiffs' termination, the burden shifts back to plaintiffs to show that defendant's proffered reason, dishonesty, was pretextual and that a motivating factor for plaintiffs' discipline was retaliation for their exercise of rights under the FMLA.

A plaintiff can prove pretext by "demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Zann Kwan*, 737 F.3d at 846. But weaknesses and implausibilities are "simply one form of circumstantial evidence that is probative of intentional discrimination[.]" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). A plaintiff's prima facie case itself may provide evidence of intentional discrimination as well. *See id.* ("The factfinder's disbelief of the reasons put forward by the defendant . . . may, together with the elements of the prima facie case, suffice to show intentional discrimination." (citation omitted)).

Plaintiffs argue that a reasonable jury could find that CSX's investigation was a sham intended to "make an example out of those who used FMLA leave," and therefore any reliance that CSX placed on its investigatory process

was not honestly held. Pls.' Opp. at 20–21. Defendant, for its part, contends that its decisionmakers honestly believed that plaintiffs misused FMLA leave and that any flaws in its investigation are "beside the point" because the "decision-maker's perception is ultimately what matters to the pretext analysis." Def.'s Mot. at 8, 17.

Defendant's view is inconsistent with governing law. The Second Circuit has stated that, under the *McDonnell Douglas* burden-shifting standard, "pretext can be established by a showing that the 'asserted neutral basis was so ridden with error' that the employer obviously could not honestly have relied on it." *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1113 (2d Cir. 1988) (quoting *Lieberman v. Gant,* 630 F.2d 60, 65 (2nd Cir. 1980)).[7] As such, "a plaintiff may prevail at trial if, in addition to establishing a prima facie case, he persuades a reasonable jury that the reason advanced for his discharge . . . was unworthy of credence." *Id.* (citations omitted).

As CSX points out, courts are not "super-personnel departments" that decide whether discipline was "prudent or fair." Dkt. No. 192 ("Def.'s Reply") at 6 (citations omitted). Indeed, "numerous courts have held that an

[7] The Second Circuit noted in *Dister* that "[a]lthough the burden shifting set forth in *McDonnell Douglas* arose and was refined in the context of employment discrimination under Title VII," the same methodology has been utilized in other contexts. 859 F.2d at 1112 (citations omitted); *see also, e.g.*, *Fasanello v. United Nations Int'l Sch.*, 2022 WL 861555, at *12 (S.D.N.Y. Mar. 23, 2022) (relying on *Dister* and *McDonnell Douglas* in denying summary judgment on FMLA retaliation claim).

employer's belief that an employee engaged in misconduct need not be correct, only honestly held."[8] *Casseus*, 722 F. Supp. 2d at 341; *LeBoeuf*, 2000 WL 1863762, at *3 ("Where an employee is terminated because the employer honestly believed that the employee was not using the leave period for its 'intended purpose,' an FMLA claim will not lie."); *Worster*, 2005 WL 1595596, at *2–3 (concluding that "an employer who honestly believes that it is terminating an employee who obtained FMLA leave fraudulently will not be liable [for retaliation] even if the employer is mistaken").

That said, while "it is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal . . . . [t]his does not mean that an employer is entitled to summary judgment in every case in which it relies upon business judgment in making an employment decision." *Dister*, 859 F.2d at 1116; *see also, e.g.*, *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.) (courts must refrain from second-guessing decision-

---

[8] While the Second Circuit has not affirmatively applied the so-called "honest belief" defense in the context of an FMLA retaliation or interference claim, some district courts in this Circuit have done so. *See, e.g.*, *Poitras v. ConnectiCare, Inc.*, 206 F. Supp. 3d 736, 746, 750 n.6 (D. Conn. 2016) (finding that honest belief defense did not preclude liability on either interference or retaliation claim and noting it had "no doubt that if the honest belief defense exists, it applies to retaliation claims" because they "require examining an employer's intent or mindset"); *Casseus*, 722 F. Supp. 2d at 341 (rejecting honest belief defense because there were disputed issues of fact regarding whether employer "acted in bad faith in interpreting plaintiff's actions"); *LeBoeuf v. N.Y. Univ. Med. Ctr.*, 2000 WL 1863762, at *3 (S.D.N.Y. Dec. 20, 2000) (accepting honest belief defense where defendant's "conclusions about [plaintiff's] fraudulent use of sick leave went unchallenged"); *Worster v. Carlson Wagonlit Travel, Inc.*, 2005 WL 1595596, at *2–3 (D. Conn. July 6, 2005) (relying on extra-Circuit authority in denying reconsideration of summary judgment where defendant honestly believed plaintiff was using FMLA leave deceptively to maintain another career), *aff'd on other grounds*, 169 F. App'x 602 (2d Cir. 2006) (summary order).

making process but must allow employees to show that employer acted in an illegitimate or arbitrary manner), *cert. denied*, 474 U.S. 829 (1985). Indeed, "facts may exist from which a reasonable jury could conclude that the employer's 'business decision' was so lacking in merit as to call into question its genuineness." *Dister*, 859 F.2d at 1116.

That is the case here. Even so, CSX makes three main arguments to the contrary: (1) that CSX's belief that plaintiffs used FMLA leave dishonestly was justified because statistically, many more T&E employees used FMLA leave on Christmas and New Year's Eve versus one week prior; (2) that plaintiffs' discipline was consistent with CSX's policies and the discipline assessed to similarly situated employees; and (3) that plaintiffs' attacks on the sufficiency of CSX's investigation are insufficient to prove that CSX acted in bad faith. Def.'s Mot. at 23–33. Each of these arguments will be rejected.

First, as to the statistical evidence that CSX claims supported its belief that plaintiffs used FMLA leave dishonestly, CSX argues:

> Plaintiffs were two of hundreds of T&E employees who marked off for FMLA leave over Christmas and New Year's Eve 2017. The number of employees who marked off over the year-end holidays far exceeded the norm. As soon as the holidays were over, the number of mark-offs returned to normal. Had these employees called out sick rather than taking FMLA leave, they would have accrued points under attendance policy, which could lead to discipline. And, taking vacation or personal leave would not have been an option for many of them. Under these circumstances, CSX reasonably believed some of its employees had used FMLA leave dishonestly and investigated the mark-offs.

Def.'s Mot. at 23.

This argument is meritless. The Second Circuit has cautioned that "statistics come in infinite variety and . . . their usefulness depends on all of the surrounding facts and circumstances." *Malave v. Potter*, 320 F.3d 321, 327 (2d Cir. 2003) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 996 n.3 (1988)). Here, "the most critical background information to ascertain was whether employees used FMLA leave uniquely more on holidays *compared to non-holidays*." *Burgess*, 2026 WL 1948129, at *10.

In determining whether to investigate and discipline plaintiffs, CSX did not review each plaintiff's FMLA leave history in its entirety. Instead, CSX relied on its automated system to flag when plaintiffs used FMLA leave on four or more occasions on holidays or adjacent to rest days or weekends. Johnson Decl. ¶ 3.

Plaintiffs point to *Parker v. CSX Transportation, Inc.*, 2021 WL 3022703 (N.D. Ala. July 16, 2021), a case which also addressed CSX's mass firing for alleged FMLA misuse during the 2017–2018 holiday season. In denying CSX's motion for summary judgment, that court noted serious flaws in the algorithm CSX used to determine which employees should be disciplined. *Id.* at *14–16. For example, the court noted:

> [I]f an employee used FMLA leave for ten days in a 12-month period, and five of those days were holidays, an employer might

> have reason to suspect misuse of leave. If an employee used FMLA leave for 60 days in a 12-month period and five of those days were holidays, there would be much less reason to pursue an investigation.

*Id.* at *15.

Further, the *Parker* court found that "the 4-in-10 test that CSX used is both under- and overinclusive" because an employee could lie about his need for FMLA leave on less than four holidays and not face an investigation, while an employee who legitimately used FMLA leave "for every holiday and special occasion" would automatically be removed from service pending a hearing based on the presumption that the employee was dishonest. *Id.* Thus, the test "targets employees who may have the greatest need for FMLA leave by investigating only employees who used FMLA leave on at least four of the preceding ten holidays." *Id.*

In this case, during each of plaintiffs' hearings, the charging officers solely testified as to plaintiffs' holiday or weekend usage that was flagged by its automated system. *See* Def.'s SOMF ¶¶ 34, 56, 64; Foringer Hearing Tr. at 13–14; Ingham Christmas Tr. at 13–15; Ingham New Year's Tr. at 9–10.

Indeed, Ingham's union representative flagged this issue when he cross-examined the charging officer:

> Krajewski: Ms. Anderson, you stated earlier . . . that he's approved for 3 episodes and each episode less than 3 days. So, he doesn't know, his body . . . does not know if it's Christmas Eve, Christmas Day when he

has an FMLA [flare]-up, he needs to be off and that's all. It doesn't matter what day or what holiday it is. Isn't that correct?

Anderson: That is correct. But, however, based on the facts surrounding FMLA usage that occurred between December 22nd and December 26th of 2017, it is clear the employee used FMLA to avoid working over a holiday, over the Christmas holiday.

Ingham Christmas Tr. at 21.

CSX has "highlighted only the most incriminating use of FMLA leave while actively ignoring non-incriminating use." *Burgess*, 2026 WL 1948129, at *10. Thus, "given the limited evidence that is currently in the record related to this subject, a reasonable juror could conclude that this omission of broader context was not accidental." *Id.* Accordingly, this first argument must be rejected.

Second, CSX argues that plaintiffs' discipline was consistent with its disciplinary policy and with discipline assessed to similarly situated employees, so plaintiffs cannot show that they received disparate treatment. Def.'s Mot. at 26.

This argument can also be swiftly rejected. Even assuming plaintiffs have not established disparate treatment, this would have no bearing on the summary judgment analysis because "[d]isparate treatment evidence is but one type of circumstantial evidence that may be relied upon to establish a prima facie case of retaliation or discrimination." *Smith*, 286 F. Supp. 3d at

514 n.9 (citing *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 124 (2d Cir. 2004) ("And as with the first stage of *McDonnell Douglas,* [plaintiff] is not required to provide evidence that similarly situated men were treated differently.")).

Third, CSX argues that plaintiffs' attacks on the adequacy of its investigation are insufficient to prove that it acted in bad faith. Def.'s Mot. at 27. The Court disagrees. Plaintiffs have put forth sufficient evidence to at least suggest that CSX's investigatory procedures "were themselves rigged against CSX's employees." *Burgess*, 2026 WL 1948129.

In each of plaintiffs' substantively similar disciplinary hearings, CSX presented as evidence: (1) global data showing that FMLA usage spiked during the 2017–2018 winter holiday season among all T&E employees; and (2) a portion of each plaintiff's FMLA log showing he used FMLA leave on one or more holidays and/or immediately before or after rest days. Def.'s SOMF ¶¶ 34, 56, 64; Foringer Hearing Tr. at 13–14; Ingham Christmas Tr. at 13–15; Ingham New Year's Tr. at 9–10.

As discussed above regarding CSX's statistical argument, notably absent from CSX's presentation of evidence at plaintiffs' disciplinary hearings was evidence regarding each plaintiff's FMLA usage on non-holidays. CSX also did not use any other investigative measures it had at its disposal including, without limitation, requiring plaintiffs to submit recertifications from their doctors

confirming their current need for FMLA leave[9] or engaging a private investigator. Pl.'s Resp. SOMF ¶ 21; Johnson 2025 Dep. at 21.

Additionally, the hearing process itself raises cause for concern. CSX did not give charged employees or their union representatives its exhibits unless requested (and subject to the charging officer's discretion). Johnson Dep. at 34, 53–54. Nor did CSX provide charged employees or their representatives the list of questions they would be asked at the hearing. *Id.* at 48, 53–54.

Defendant neither provides, nor has this Court located, any binding authority that the sufficiency of CSX's investigation is "beside the point." *See* Def.'s Reply at 8. To the contrary, the investigation is precisely the point. While CSX is correct that it is not required to request recertification or engage a private investigator to follow each employee who used FMLA leave on holidays, Def.'s Mot. at 10, 31–32, a reasonable juror could examine CSX's procedure for rooting out dishonesty and determine that it is "so ridden with error" and "lacking in merit" such that CSX "obviously could not honestly have relied

---

[9] By regulation, if an employer has "information that casts doubt upon the employee's stated reason for the absence or the continuing validity of the certification," then the employer may demand recertification of a serious medical condition that warrants FMLA leave. 29 C.F.R. § 825.308. "For example, if an employee is on FMLA leave for four weeks due to the employee's knee surgery, including recuperation, and the employee plays in company softball league games during the employee's third week of FMLA leave, such information might be sufficient to cast doubt upon the continuing validity of the certification allowing the employer to request a recertification. . . ." 29 C.F.R. § 825.308(c)(3). "As part of the information allowed to be obtained on recertification for leave taken because of a serious health condition, the employer may provide the health care provider with a record of the employee's absence pattern and ask the health care provider if the serious health condition and need for leave is consistent with such a pattern." 29 C.F.R. § 825.308(e).

on it" for some or all of the above reasons, raising the possibility of pretext with respect to CSX's rationale for plaintiffs' terminations. *Dister*, 859 F.2d at 1116.

Defendant's reliance on *Adams v. CSX Transportation, Inc.*, 2020 WL 1285544 (N.D. Ala. Mar. 18, 2020) is misplaced. There, the trial court considered similar FMLA claims brought by another CSX employee disciplined for FMLA misuse during the relevant time period and determined that CSX was entitled to summary judgment because plaintiff "failed to . . . show[ ] that CSX did not have a good-faith belief that he dishonestly used his FMLA leave, *and* that the underlying reason for his suspension was actually retaliation." *Adams*, 2020 WL 1285544, at *9.

That may be true in the Eleventh Circuit. But under Second Circuit precedent, plaintiffs need not prove that the underlying reason for their discipline was actually retaliation; rather, they must prove that it was a "motivating factor" contributing to their discipline. *Woods*, 864 F.3d at 166. And for the reasons discussed above, plaintiffs have raised arguments that, if credited by a fact-finder, could support the conclusion that CSX was motivated—at least in part—by retaliation.

Thus, there exist genuine issues of material fact as to whether plaintiffs' legitimate use of FMLA leave resulted in their termination that preclude summary judgment. *See, e.g.*, *Summa v. Hofstra Univ.*, 708 F.3d 115, 129–30 (2d Cir. 2013) (finding plaintiff made sufficient showing of pretext to survive

summary judgment where record contained evidence supporting plaintiff's narrative and disproving factual elements of defendant's legitimate rationale for adverse action); *Treglia v. Town of Manlius*, 313 F.3d 713, 721–22 (2d Cir. 2002) (finding, on retaliation claims under the ADA and Rehabilitation Act, that plaintiff made sufficient showing on pretext to survive summary judgment where managers made statements indicating retaliatory motive and record contained evidence that could refute defendant's legitimate reason for adverse action).

To be sure, it will be "a tall task" for plaintiffs to show at trial that CSX's belief was "not honestly held and that CSX instead acted out of retaliatory animus." *Burgess*, 2026 WL 1948129, at *8. It is a close case, and a reasonable juror might well credit CSX's explanation. But, at this stage, the Court is not prepared to say that no reasonable juror could find in favor of plaintiffs. *See Viola v. Philips Med. Sys.*, 42 F.3d 712, 716 (2d Cir. 1994) ("A grant of summary judgment is proper only if the evidence of discriminatory intent is so slight that no rational jury could find in plaintiff's favor.").

In sum, although defendant has offered evidence to undermine plaintiffs' retaliation claim, there are sufficient issues of disputed fact, including credibility determinations, that require these claims to be decided by a jury. Accordingly, defendant's motion for summary judgment will be denied with respect to plaintiffs' FMLA retaliation claim.

**B. Interference**

Defendant has also moved for summary judgment on plaintiffs' FMLA interference claim, arguing that it is duplicative of their retaliation claim. Def.'s Mot. at 34–35. Plaintiffs agree that their interference claim arises from the same set of facts as their retaliation claim, but urge that instead of dismissal this interference claim must go to trial on the same basis as their retaliation claim. Pls.' Opp. at 22.

"The FMLA prohibits employers from interfering with 'the exercise of or the attempt to exercise' any right under the FMLA." *Haran*, 106 F.4th at 56 (quoting 29 U.S.C. § 2615(a)(1)). "The regulations explain that '[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.'" *Id.* (quoting 29 C.F.R. § 825.220(b)).

"To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA." *Graziadio*, 817 F.3d at 424 (citing 29 U.S.C. § 2615(a)(1)); *see also Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 69 (2d Cir. 2024) ("[A]n employer can violate the FMLA merely by interfering with the employee's benefits under the FMLA without actually denying the employee's request for those benefits.").

Specifically, "a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio*, 817 F.3d at 424.

CSX does not argue that plaintiffs cannot prove any particular element of their interference claim. Instead, defendant argues that this claim must be dismissed because it "is simply a repackaged version of their retaliation claim." Def.'s Mot. at 34. Plaintiffs, for their part, acknowledge that "under circumstances like those present here, the analysis of FMLA interference and retaliation claims effectively merge," and, as such, their FMLA claim should "survive[ ] under this framework." Pl.'s Opp. at 22.

Generally, FMLA interference and retaliation causes of action are aimed at protecting against different conduct. *See Woods*, 864 F.4th at 166 ("[A]n employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA. 'Retaliation' claims, on the other hand, involve an employee actually exercising her rights . . . and then being subjected to some adverse employment action by the employer. The two types of claims serve as *ex ante* and *ex post* protections

for employees who seek to avail themselves of rights granted by the FMLA." (internal citations omitted)).

But not always. Where, as here, plaintiffs assert an interference claim based on the same *ex post* adverse action—their termination—as their retaliation claim, the interference claim is "merely a retaliation theory in disguise." *Sparks*, 2026 WL 2389222, at *13 (collecting cases); *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 203 (S.D.N.Y. 2009) (granting summary judgment on interference claim because plaintiff's theory that he was terminated "due to alleged performance problems that resulted from the very use of his FMLA leave" was "no more than an effort to dress [his] retaliation claim in (barely) different clothing").

Plaintiffs do not attempt to show any *ex ante* conduct on defendant's part that impacted their rights under the FMLA. Accordingly, defendant's motion for summary judgment will be granted as to plaintiffs' FMLA interference claim.[10]

### C. Defendant's Motion to Preclude

Finally, CSX has moved to preclude the expert report and testimony of plaintiff's expert, Beth De Lima, Dkt. No. 182-1. Defendant filed its motion to

---

[10] While the Second Circuit "has neither affirmed nor rejected this approach," another district court in this Circuit concluded that there was "implicit support for the approach" in an earlier Second Circuit decision, *Potenza v. City of New York*, 365 F.3d 165 (2d Cir. 2004). *Sparks*, 2026 WL 2389222, at *14–15 (granting summary judgment on FMLA interference claim "because it sounds entirely in retaliation, and therefore the *McDonnell Douglas* framework applies").

preclude contemporaneously with its summary judgment motion based on its expectation that plaintiffs (or perhaps the Court) would rely on De Lima's opinions in opposing summary judgment.

The Court, however, has not relied on De Lima's report or opinions in resolving defendant's motion for summary judgment. Accordingly, defendant's motion to preclude is denied as moot to the extent it seeks to exclude De Lima's opinions from consideration at summary judgment. *See Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 504 n.9 (S.D.N.Y. 2015) ("To the extent that [d]efendants move to strike [the] reports . . . the motions are effectively moot as the Court did not rely on the reports in reaching its conclusions on the motions for summary judgment."); *see also Endemann v. Liberty Ins. Corp.*, 2023 WL 4102245, at *2 n.4 (2d Cir. June 21, 2023) (summary order) ("We also affirm the district court's denial of [appellant's] motion to preclude [appellee's] expert testimony as moot because the district court did not rely on it in its summary judgment ruling.").

To the extent that defendant seeks to preclude De Lima from testifying at trial, that request is premature. The Uniform Pretrial Scheduling Order contemplates that motions *in limine* will be filed in advance of the Final Pretrial Conference absent leave of Court. *See* Dkt. No. 150 at 7. Defendant's motion will therefore be denied without prejudice to renewal after a trial date has been set.

## V. CONCLUSION

Therefore, it is

ORDERED that

1. Defendant's motion for summary judgment (Dkt. No. 181) is GRANTED in part and DENIED in part; and
2. Defendant's motion to preclude (Dkt. No. 182) is DENIED as moot.

The Clerk of the Court is directed to terminate the pending motion and set a trial date accordingly.

IT IS SO ORDERED.

Dated: November 18, 2026
Utica, New York

David N. Hurd
U.S. District Judge